IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 MAR 30  PM 4: 24
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA *Ex rel.* Michael J. Fisher, Brian Bullock and Michael Fisher, Individually and Brian Bullock, Individually,<br><br>          Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>          Defendant. | A15mc0248 SS<br>Misc. No. _____<br>(Related to Civil Action No. 4:12-cv-00543-ALM (E.D. Tex.)) |

## STONETURN GROUP LLP'S OPPOSED MOTION TO QUASH PLAINTIFFS' NON-PARTY SUBPOENA

StoneTurn Group LLP ("StoneTurn"), a non-party to the underlying litigation, files this motion to quash Plaintiffs' non-party subpoena pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), and respectfully shows as follows.

### I.      INTRODUCTION

StoneTurn is a limited liability partnership, headquartered in Boston, that employs thirteen Partners (three of whom have law degrees) and approximately eighty professionals. *See* Ex. 1 at ¶ 1.[1] StoneTurn provides consulting services and has regularly served as a monitor pursuant to appointment by various state and federal regulatory agencies. *Id.*

StoneTurn is not a party to the lawsuit from which Plaintiffs have issued their subpoena, *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, now pending before Judge

---

[1] The Declaration of Larry A. Phillips which is attached hereto as Exhibit A is filed in Support of StoneTurn Group LLP's Opposed Motion to Quash Plaintiffs' Non-Party Subpoena. The Declaration of Larry A. Phillips has attached to it Exhibits 1 – 5. The Declaration of Larry A. Phillips and the exhibits thereto are incorporated herein.

Mazzant in the United States District Court for the Eastern District of Texas. StoneTurn has been served with a non-party subpoena due to its role as a Compliance Monitor for Ocwen Loan Servicing, LLC and Ocwen Financial Corporation (collectively "Ocwen" or "OLS"), a role StoneTurn has filled since July 2013 pursuant to an appointment by the New York Department of Financial Services ("NYDFS"). *See* Ex. 1 at ¶¶ 3-4. Ocwen was required to retain a Compliance Monitor in 2012 under a consent order with NYDFS (the "2012 Consent Order") relating to its failure to comply with a predicate agreement that called for material improvements to its loan servicing program (the "2011 Agreement"). *See* Ex. 2 at 2-5; Ex. 5. NYDFS entered into a second consent order with Ocwen in 2014, and has required a second monitorship for that process. *See* Ex. 3 at 11-13.

On March 11, 2015—more than two years after filing their initial complaint—Plaintiffs in this lawsuit served a non-party subpoena on StoneTurn with regard to eight broad categories of materials; specifically, the non-party subpoena asks StoneTurn to produce:

Category 1:   "[A]ll OLS borrower electronic or printed loan files produced or provided to you by Ocwen for audits in connection with the 2012 Consent Order at the instance of [NYDFS] and arising out of the 2011 Agreement";

Category 2:   "[A]ll audits, reports, evaluations, business plans (or the like), summaries or communications generated or received by you regarding the violations, complaints, problems or compliance issues reported or discovered by you during and after the audits of OLS borrowers' files pursuant to the 2012 [Consent] Order";

Category 3:   "[C]omplete transactional loan file[s] for each of the OLS loan files provided to you by OLS for the audit pursuant to the 2012 [Consent] Order";

Category 4:   "[A]ll documents and communications that refer or relate to Michael J. Fisher, individually or as Relator";

Category 5:   "[A]ll documents and communications that refer or relate to Brian Bullock, individually or as Relator";

2

Category 6: "[A]ll documents and communications that refer or relate to the instant litigation";

Category 7: "[A]ll communications and other documents, whether electronic or printed, which evidence or relate [to] OLS's compliance with federal or state laws; including, but not limited to, the [2014 Consent Order]"; and

Category 8: "[A]ll documents or communications, whether electronic or printed, which evidence or relate to William C. Erbey and/or Ron Faris (or their representatives), including without limitation any documents or communications regarding any issue of OLS's compliance with federal or state laws or the [2014 Consent Order]".

Ex. 4 at 3-4. Documents that might be responsive to these eight categories are included in the more than 4.5 million pages of documents that Ocwen provided to StoneTurn, and some additional documents that StoneTurn has provided to Ocwen in the course of the monitorship. *See* Ex. 1 at ¶ 5. Documents in StoneTurn's possession that Ocwen does not possess—which are likely included as a limited subset of documents in Categories 2, 4, 5, 6, 7 and 8—primarily comprise a small set of work product items, such as purely internal work product documents, work product communications with another non-party that served as a co-monitor, Boston Portfolio Advisors, Inc. and documents shared only with NYDFS.

Prior to filing this motion, StoneTurn sought to confer in good faith with Plaintiffs regarding their non-party subpoena and StoneTurn's motion to quash, but an agreement could not be reached due to material differences in understanding the necessity of the non-party subpoena. StoneTurn further conferred with Plaintiffs on this motion to quash, and here certifies that Plaintiffs oppose the motion.

## II.  ARGUMENT

This Court should quash Plaintiffs' non-party subpoena for two reasons. First, the subpoena imposes an undue burden on StoneTurn, a non-party to the litigation. Second, the subpoena seeks material that is privileged and protected.

### A. The Subpoena Imposes an Undue Burden on StoneTurn, a Non-Party

Under Rule 45(d)(3)(A)(iv), a court is required to quash or modify a subpoena that "subjects a person to undue burden". The following non-exclusive factors are used to determine whether a subpoena is unduly burdensome: (1) the "relevance of the information requested"; (2) "the need of the party for the documents"; (3) "the breadth of the document request"; (4) "the time period covered by the request"; (5) "the particularity with which the party describes the requested documents"; and (6) "the burden imposed". *Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812, 818 (5th Cir. 2004). Further, the United States District Court for the Eastern District of Texas—where the litigation is pending—has considered additional factors such as "whether the request is cumulative and duplicative, the time and expense required to comply with the subpoena (relative to the responder's resources), and the importance of the issues at stake in the litigation". *Carroll v. Variety Children's Hosp.*, No. 4:07-MC-033, 2007 WL 2446553, at *1 (E.D. Tex. Aug. 23, 2007) (quoting *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998)). Where the entity to whom the document request is made is a non-party, courts have particularly weighed "the expense and inconvenience" to that entity. *Wiwa*, 392 F.3d at 818.

Plaintiffs' subpoena imposes a patently undue burden on StoneTurn, a non-party to this lawsuit. The eight broad categories potentially seek in excess of 4.5 million pages of documents from StoneTurn, despite the fact that practically all of these documents were received from Ocwen or are otherwise in Ocwen's possession. Ex. 1 at ¶¶ 5, 7. There is no reason Plaintiffs cannot seek these documents from the party they have sued (or its parent company); indeed, we understand that Plaintiffs are simultaneously seeking these documents from Ocwen through party discovery. Plaintiffs cannot show a need to obtain documents from StoneTurn when those documents may be obtained from Ocwen.

4

Plaintiffs' requests are additionally burdensome for StoneTurn because they are overbroad on their face. This is not a subpoena in which a party seeks discrete, easily identifiable documents from a non-party, or even documents identified with meaningful particularity. Rather, Plaintiffs' non-party subpoena seeks broad categories of documents received or generated by StoneTurn in connection with the monitorship, without reference to a time range or to items that cannot be obtained from Ocwen. *See* Ex. 4. To respond, StoneTurn will have to undertake an exhaustive review of millions of pages of documents to parse what is, and is not, non-privileged and responsive to Plaintiffs' vague requests. This review would impose a tremendous undue burden on StoneTurn, a small partnership, and that burden is totally unnecessary when Plaintiffs can get the documents from Ocwen—one of the largest mortgage servicers in the United States that undoubtedly has superior resources to bring to bear in responding to a party-discovery request.[2] *See* Ex. 1 at ¶¶ 1, 5, 7, 8. "[T]he expense and the inconvenience" to StoneTurn, *Wiwa*, 392 F.3d at 818, when Plaintiffs can obtain the vast majority of these materials from Ocwen, strongly counsel in favor of quashing Plaintiffs' non-party subpoena. *See, e.g., SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

### B. The Subpoena Seeks StoneTurn's Privileged Work Product

To the extent Plaintiffs seek documents not obtainable from Ocwen in Categories 2, 4, 5, 6, 7 and 8, this Court should quash the non-party subpoena on the independent ground that it seeks StoneTurn's internal work papers protected by the work product privilege. Rule 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of

---

[2] Reviewing more than 4.5 million pages of documents would likely require thousands of hours of review by a mixture of StoneTurn personnel and contractors, supervised by counsel and StoneTurn staff. *See* Ex. 1 at ¶ 8. This is a tremendous burden to place on StoneTurn in any circumstance, but particularly when Plaintiffs can seek practically all these documents from a party to this action.

privileged or other protected matter". The work product privilege, found at Rule 26(b)(3)(A), provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative". Under this Circuit's precedent, a document is prepared in anticipation of litigation and thus entitled to work product protection "as long as the primary motivating purpose behind the creation of the document [is] to aid in possible future litigation". *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981); *see also In re Kaiser Alum. & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). The "litigation need not necessarily be imminent". *Davis*, 636 F.2d at 1040.

The documents prepared by StoneTurn during the course of its monitorship—which are likely included as a limited subset of documents in Categories 2, 4, 5, 6, 7 and 8—fall squarely within the work product protection recognized in this Circuit. The Ocwen monitorship was triggered by its failure to comply with the 2011 Agreement, which called for remediation in a number of segments of Ocwen's operations. *See* Ex. 1 at ¶ 9; Ex. 2 at 2-3; Ex. 5. As a Compliance Monitor, StoneTurn addressed these weaknesses and deficiencies, often assessing whether Ocwen had come into compliance with New York legal requirements and the conditions set by Ocwen's regulator, NYDFS. Ex. 1 at ¶¶ 9, 10. In the course of this work, StoneTurn prepared various reports and communications in the shadow of the prospect that NYDFS could take further action against Ocwen should the problems go unresolved. *Id.*; Ex. 2 at 7-8; Ex. 3 at 18. StoneTurn's internal work papers and communications relating to the monitorship are StoneTurn's mental impressions protected by the work product privilege. *See In re LTV Sec. Litig.*, 89 F.R.D. 595, 614-19 (N.D. Tex. 1981).

In *LTV Securities*, the court found that materials prepared by a "Special Officer" appointed to implement a consent order with the Securities and Exchange Commission ("SEC")

were entitled to work product privilege afforded to SEC investigators, because the Special Officer was appointed by a regulatory agency and had independent duties other than to the company client. The court reasoned that "[s]pecial investigative counsel are an increasingly common element of SEC consent decrees", and that production of the requested materials would have an "immediate adverse impact on the ongoing investigation" and affect "th[e] developing procedure of negotiated corporate self-investigation".[3] *Id.* at 618.

As in *LTV Securities*, here, StoneTurn was appointed by NYDFS to be a Compliance Monitor after NYDFS found significant deficiencies in Ocwen's loan servicing operations and required substantial remedial measures to be taken; the core purpose of the appointment was to assist NYDFS in understanding and assessing the extent of compliance, or non-compliance, of one of its regulated entities. *See* Ex 1 at ¶ 10; Ex. 2 at 4-6. StoneTurn worked closely with NYDFS in this process and presumably formed part of NYDFS' assessement of whether a second action would be necessary to remedy the problems that were identified—an assessment that has led to an additional monitorship of Ocwen. *See* Ex. 1 at ¶¶ 6, 9, 10; Ex. 3 at 1. StoneTurn's investigative work, done in coordination with Ocwen's regulator, is the very type of work for which the privilege applies.

---

[3] In circumstances similar to those presented here, other courts have also found work product protection to apply. *See In re Cardinal Health, Inc. Sec. Litig.*, No. C2 04 575 ALM, 2007 WL 495150, at *5 (S.D.N.Y. Jan. 26, 2007) (holding that special counsel retained by a company to conduct an internal investigation after the SEC began investigating the company was entitled to invoke work product protection); *In re Vioxx Prods Liability Litig.*, No. MDL 1657, 2007 WL 854251, at *3-4 (E.D. La. Mar. 6, 2007) (holding that materials prepared by outside counsel hired to conduct an internal investigation of a company were protected by work product privilege).

## III. CONCLUSION

Plaintiffs' subpoena subjects StoneTurn, a non-party to the underlying litigation, to undue burden, and seeks StoneTurn's privileged work product. For these reasons, StoneTurn respectfully requests that this Court grant the motion and quash the subpoena.

Dated: March 30, 2015

Respectfully submitted,

_____
**SIEBMAN, BURG, PHILLIPS & SMITH, LLP**
Clyde M. Siebman (Texas Bar No. 18341600)
Larry A. Phillips (Texas Bar No. 15937755)
Stephanie R. Barnes (Texas Bar No. 24045696)
Federal Courthouse Square, 300 North Travis St.
Sherman, TX 75090
Phone: (903) 870-0070
Fax: (903) 870-0066
clydesiebman@siebman.com
larryphillips@siebman.com
stephaniebarnes@siebman.com

**CRAVATH, SWAINE & MOORE LLP**
John D. Buretta
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
jburetta@cravath.com

*Counsel for StoneTurn Group LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2015, a true and correct copy of the foregoing document is being served by facsimile and electronic mail on the following:

| ATTORNEYS FOR RELATORS/QUI TAM PLAINTIFFS | ATTORNEY FOR THE UNITED STATES OF AMERICA |
|---|---|
| Samuel L Boyd<br>Catherine Carlyle Jobe<br>Boyd & Associates<br>6440 North Central Expressway<br>Suite 600<br>Dallas, TX 75206<br>214/696-2300<br>Fax: 12143636856<br>sboyd@boydfirm.com<br>cjobe@boydfirm.com<br><br>Chad Brian Walker<br>Grant K Schmidt<br>Thomas M Melsheimer<br>Fish & Richardson - Dallas<br>1717 Main St.<br>Suite 5000<br>Dallas, TX 75201<br>214-747-5070<br>Fax: 214-747-2091<br>cbwalker@fr.com<br>gschmidt@fr.com<br>melsheimer@fr.com<br><br>David Scott Morris<br>Fish & Richardson - Austin<br>111 Congress Ave<br>Suite 810<br>Austin, TX 78701-4061<br>512-226-8116<br>Fax: 512-320-8935<br>dmorris@fr.com<br><br>Roger D Sanders<br>Sanders O'Hanlon, Motley & Young<br>111 S. Travis Street<br>Sherman, TX 75090 | J Kevin McClendon<br>US Attorney's Office - Plano<br>101 E Park Blvd<br>Suite 500<br>Plano, TX 75074<br>972/509-1201<br>Kevin.McClendon@usdoj.gov |

| | |
|---|---|
| 903/892-9133<br>Fax: 903-892-4302<br>roger.sanders@somlaw.net | |
| **ATTORNEYS FOR DEFENDANTS**<br><br>Gerard E Wimberly , Jr<br>Daniel T Plunkett<br>Gabriel Alan Crowson<br>Melissa Hope Harris<br>McGlinchey Stafford PLLC - New Orleans<br>601 Poydras Street<br>12th Floor<br>New Orleans, LA 70130<br>504-586-1200<br>Fax: 504-596-2800<br>gwimberly@mcglinchey.com<br>dplunkett@mcglinchey.com<br>gcrowson@mcglinchey.com<br>mharris@mcglinchey.com<br><br>Richard Dwayne Danner<br>McGlinchey Stafford, PLLC<br>2711 N. Haskell Ave<br>Suite 2750<br>Dallas, TX 75204<br>214-445-2445<br>Fax: 214-445-2450<br>ddanner@mcglinchey.com | |

SIEBMAN, BURG, PHILLIPS & SMITH, LLP

_____
Larry A. Phillips