Case 4:15-mc-00014-ALM   Document 18   Filed 06/26/15   Page 1 of 11 PageID #:  311

# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* § | | |
| MICHAEL J. FISHER, *et al.* § | | |
| § | | |
| v. § | CASE NO. 4:15-MC-0013 | |
| § | Judge Mazzant | |
| OCWEN LOAN SERVICING, LLC § | | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* § | | |
| MICHAEL J. FISHER, *et al.* § | | |
| § | | |
| v. § | CASE NO. 4:15-MC-0014 | |
| § | Judge Mazzant | |
| OCWEN LOAN SERVICING, LLC § | | |

**ORDER RE BOSTON PORTFOLIO ADVISORS, INC. AND STONETURN
GROUP LLP'S MOTIONS TO QUASH PLAINTIFFS' NON-PARTY SUBPOENA**

Pending before the Court are non-parties Boston Portfolio Advisors, Inc.'s Re-Urged, Opposed Motion to Quash Plaintiffs' Non-Party Subpoena (Case No. 4:15-MC-13, Dkt. #8) and StoneTurn Group, LLP's Opposed Motion to Quash Plaintiffs' Non-Party Subpoena (Case No. 4:15-MC-14, Dkt. #1). After considering the motions, the responses, and the relevant pleadings in both cases, as well as in the related case *United States of America ex rel. Michael J. Fisher, et al. v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, and the oral argument of the parties regarding these motions on June 4, 2015, the Court finds that the motions should be granted in part and denied in part.

## BACKGROUND

Plaintiffs in the underlying litigation, *United States of America ex rel. Michael J. Fisher, et al. v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, issued non-party subpoenas to Boston Portfolio Advisors, Inc. ("Boston Portfolio") and StoneTurn Group LLP ("StoneTurn"), due to

their role as compliance monitors for Ocwen Loan Servicing, LLC and Ocwen Financial Corporation (collectively "Ocwen"). In 2012, a consent order was reached by Ocwen and the New York Department of Financial Services ("NYDFS") as a result of NYDFS's conclusion that Ocwen failed to comply with a prior agreement calling for certain improvements in its loan servicing program. At different times, both StoneTurn and Boston Portfolio have served as the compliance monitors for Ocwen. The subpoenas at issue in these motions were served on the movants on March 11, 2015, and request that the movants produce:

1. All OLS borrower electronic or printed loan files produced or provided to you by Ocwen for audits in connection with the 2012 Consent Order at the instance of the NYDFS and arising out of the September 1, 2011 Agreement between Ocwen and NYDFS.

2. All audits, reports, evaluations, business plans (or the like), summaries or communications generated or received by you regarding the violations, complaints, problems, or compliance issues reported or discovered by you during and after the audits of Ocwen borrowers' files pursuant to the 2012 Consent Order.

3. The complete transactional loan files for each of the Ocwen loan files provided to you for the audit pursuant to the 2012 Consent Order.

4. All documents and communications that refer or relate to Michael J. Fisher, individually or as Relator in the instant litigation.

5. All documents and communications that refer or relate to Brian Bullock, individually or as Relator in the instant litigation.

6. All documents and communications that refer or relate to the instant litigation.

7. All communications and other documents, whether electronic or printed, which evidence or relate to Ocwen's compliance with federal or state laws; including, but not limited to, the Consent Order executed by the parties in December 2012.

8. All documents or communications, whether electronic or printed, which evidence or relate to William C. Erbey and/or Ron Faris (or their representatives), including without limitation any documents or communications regarding any issue of Ocwen's compliance with federal or state laws or the Consent Order executed by the parties in December 2012.

(No. 4:15-MC-13, Dkt. #8, Ex. 2 at 2-3; No. 4:15-MC-14, Dkt. #1, Ex. 4 at 3-4).

The movants assert that there are two categories of documents that have been identified that are responsive to this request.  One category consists of documents produced by Ocwen to the movants in order to conduct the monitoring.  The second category consists of a smaller subset of documents that represent internal documents created by the non-party movants, and consist of reports and other documents related to their findings from the monitorship.  The movants contend that the documents produced by Ocwen are unduly burdensome to produce.  The movants also argue that the internal work product documents are protected by the work product privilege.

On April 23, 2015, in case number 4:15-MC-13, Boston Portfolio filed its motion to quash (Dkt. #8).  Also, on April 23, 2015, Boston Portfolio filed a motion to expedite treatment of the re-urged motion to quash, which was granted by the Court on April 28, 2015 (Dkt. #9, #11).  On April 27, 2015, Relators filed their response (Dkt. #10).  On April 30, 2015, Boston Portfolio filed its reply (Dkt. #13).  Relators filed their sur-reply on May 18, 2015 (Dkt. #17).  The Court conducted a hearing on this motion on June 4, 2015 (Dkt. #19).

On March 30, 2015, StoneTurn filed its motion to quash in the Western District of Texas (Dkt. #1), and the case was transferred to the Eastern District of Texas on April 6, 2015, and assigned case number 4:15MC14 (Dkt. #6).  On April 8, 2015, the Court ordered Relators to file a response to the motion to quash no later than 5:00 p.m. on April 13, 2015 (Dkt. #7).  On April 16, 2015, Relators filed an unopposed motion for leave to file a late response to StoneTurn's motion to quash, which was granted by the Court on April 22, 2015 (Dkt. #9, #11).  Relators' response was filed April 21, 2015 (Dkt. #10).  On April 29, 2015, StoneTurn filed its reply (Dkt. #12).  On May 8, 2015, Relators filed their sur-reply (Dkt. #14).  The Court conducted a hearing on this motion on June 4, 2015 (Dkt. #17).

## ANALYSIS

Under Federal Rule of Civil Procedure 45(d)(3)(A), a court is required to quash or modify a subpoena that: (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of a privileged or protected matter; or (4) subjects a person to undue burden. *See also Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 817-18 (5th Cir. 2004). StoneTurn and Boston Portfolio assert that the subpoenas at issue subject the two non-party entities to undue burden. The moving party has the burden of proof to demonstrate "'that compliance with the subpoena would be 'unreasonable and oppressive.'" *Id*. at 818. The Court must consider the following factors to determine whether the subpoena presents an undue burden: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the undue burden imposed." *Id*. "[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id*. "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Id*. The Eastern District of Texas has also considered "whether the request is cumulative and duplicative, the time and expense required to comply with the subpoena (relative to the responder's resources), and the importance of the issues at stake in the litigation." *Carroll v. Variety Children's Hosp*., No. 4:07-MC-033, 2007 WL 2446553, at *1 (E.D. Tex. Aug. 23, 2007) (quoting *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998)).

StoneTurn and Boston Portfolio do not dispute that the documents requested by the subpoena are likely to be relevant to the underlying litigation, and the Court agrees (factor 1).

However, StoneTurn and Boston Portfolio do argue that the subpoenas are overbroad, and because of the breadth in scope, the entities are unable to determine whether the documents requested are relevant or not (factors 1 and 3). In addition, StoneTurn and Boston Portfolio assert that Relators do not need the requested information because they can obtain it from Ocwen, who is a defendant in the underlying litigation (factor 2). There is no argument regarding the time period covered by the request (factor 4). StoneTurn and Boston Portfolio argue that the documents requested are not described in the subpoenas with particularity, and this imposes an undue burden on both entities (factors 5 and 6).

StoneTurn is a limited liability partnership, headquartered in Boston, that employs thirteen partners (three of whom have law degrees) and approximately eighty professionals (No. 4:15-MC-14, Dkt. #1, Ex. 1 at ¶ 1). StoneTurn provides consulting services and has regularly served as a monitor pursuant to appointment by various state and federal regulatory agencies. *Id*. StoneTurn contends that the eight broad categories of the subpoena potentially seek in excess of 4.5 million pages of documents from StoneTurn, despite the fact that practically all of these documents were received from Ocwen or are otherwise in Ocwen's possession. *Id*. at ¶¶ 5, 7. StoneTurn asserts that

> Imposing the burden of reviewing millions of pages of documents and making a production will impose a tremendous burden on StoneTurn. Reviewing more than 4.5 million pages of documents would likely require thousands of hours of review by a mixture of StoneTurn personnel and contractors, supervised by counsel and StoneTurn staff.

*Id*. at ¶ 8. In addition, StoneTurn notes that when the documents were received by it from Ocwen, employees from all over the nation could look at this information, download to their servers, and review or edit the information. StoneTurn contends that retrieving these documents

from each computer and server would be a monumental undertaking, whereas for Ocwen it would be much easier.

Boston Portfolio is a financial consulting firm based in Fort Lauderdale, Florida, that has provided portfolio management, risk management, and due diligence, among many other services, to the financial industry for over thirty years (No. 4:15-MC-13, Dkt. #8-1 at ¶ 3). Boston Portfolio employs eighteen (18) professionals, and from time to time uses the services of independent contractors on a project-by-project basis. *Id*. at ¶ 5. Boston Portfolio contends that to date, it has located approximately 12,000 documents (with an unknown number of total pages comprising the documents) that may be responsive to the subpoena. *Id*. at ¶ 11.

The Court will now turn to the factors that must be considered to determine if the request is unduly burdensome on the two non-parties. StoneTurn and Boston Portfolio only argue that the documents submitted by Ocwen to these entities would be unduly burdensome to produce, and do not argue that the internal reports are also unduly burdensome to produce. Therefore, the Court will consider the undue-burden argument as it pertains only to the documents provided to the non-parties by Ocwen. The Court agrees that many of the documents, if not all, are likely relevant to the litigation. The underlying loan documents provided to StoneTurn and Boston Portfolio evidence the violations of law and regulations that rendered Ocwen's certifications of compliance false, which form the basis of Relators' claims.

Relators argue that they need to obtain these particular documents from the non-parties because Ocwen does not have a clean discovery record in other cases, and Relators will use the requested documents to confirm the completeness and accuracy of the documents produced by Ocwen. Further, Relators assert that Ocwen is also resisting discovery in this case and has only produced a small number of documents to date.

At this time, the Court finds there is only a slight need for the documents requested by the subpoena. Relators can obtain the documents from Ocwen, rather than the non-parties, and, although Relators argue that they are having difficulty obtaining discovery from Ocwen, at the hearing Ocwen stated that it is in the process of reviewing all the relevant documents and producing discovery. Ocwen stated that it is working with an ESI vendor who was in the process of downloading e-mails and documents and putting them in a form to make the documents searchable. Ocwen stated that the discovery will be produced, but it needs more time to produce the documents. Ocwen affirmed that the document production is voluminous, and it is complying with its discovery obligations as quickly and efficiently as possible. At the hearing, the Court orally ordered Ocwen to speed up its document production. Thus, although the Court recognizes that there is a need for the documents, the fact that they can be obtained from Ocwen, rather than the non-parties, makes the need for Relators to obtain the documents from the non-parties only a slight need, at this time.

The Court next considers the breadth of the request. Relators contend that their request pertains to a specific, discrete transaction, which is clearly defined by the subpoena. StoneTurn and Boston Portfolio assert that the subpoenas are overbroad and seek all the documents that relate to the two individuals and that relate to this litigation. .

The Court finds that the time period covered by the request is reasonable.

Next, Relators contend that the non-parties do not argue that they do not understand the scope of the requests and have not sought clarification.

The next factor for the Court to consider is burden imposed, and the expense and inconvenience to the non-parties. The Court finds that while the burden imposed on the non-parties is reasonable, the expense and inconvenience to the non-parties is substantial. The non-

parties will be required to expend significant time and effort obtaining these materials for production, reviewing them for relevance and privilege, and may have to hire the services of an ESI vendor to complete the production. In addition, compliance with the subpoena would require two relatively small companies to divert their employee resources from working on their current projects and other commitments, and require these employees to undertake an extensive document review process. The Court finds that this is a substantial expense and inconvenience, especially given that these entities are not parties to the current litigation.

The Relators are requesting the production of the same set of documents from StoneTurn, Boston Portfolio, and Ocwen. If the production of these documents were required, the Relators would receive approximately 4.5 million pages of documents three times from three different sources.

Finally, the Court agrees with Relators that the issues at stake in the litigation are important issues. However, after review and consideration of all the factors, the Court finds that the subpoena requests identifying documents that were produced by Ocwen and sent to StoneTurn and Boston Portfolio as part of the investigation are unduly burdensome and the subpoenas should be quashed on that ground at this time. Relators should first seek these documents from Ocwen.

StoneTurn and Boston Portfolio also assert that the limited amount of internal documents created by StoneTurn and Boston Portfolio are protected by work product privilege. The work product privilege, found at Federal Rule of Civil Procedure 26(b)(3)(A), provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Under Fifth Circuit precedent, a document is prepared in anticipation of litigation "as long as the primary motivating purpose behind the

creation of the document [is] to aid in possible future litigation." *U.S. v. Davis*, 636 F.2d 10228, 1040 (5th Cir. 1981); *see also In re Kaiser Alum. & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). The "litigation need not necessarily be imminent." *Davis*, 636 F.2d at 1040.

StoneTurn and Boston Portfolio assert that the monitorship in this case was triggered by Ocwen's failure to comply with the 2011 Agreement, which called for remediation in a number of segments of Ocwen's operations. During the course of the monitorship, StoneTurn and Boston Portfolio addressed the weaknesses and deficiencies and assessed whether Ocwen was in compliance with New York legal requirements and conditions set by the regulator NYDFS. StoneTurn and Boston Portfolio assert that this situation is analogous to the *LTV Securities* opinion authored by the Northern District of Texas. 89 F.R.D. 595 (N.D. Tex. 1981). In *LTV Securities*, the court found that materials prepared by a "Special Officer" appointed to implement a consent order with the Securities and Exchange Commission ("SEC") were entitled to work product privilege afforded to SEC investigators, because the Special Officer was appointed by a regulatory agency and had independent duties other than to the company client. The court reasoned that "[s]pecial investigative counsel are an increasingly common element of SEC consent decrees," and that production of the requested materials would have an "immediate adverse impact on the ongoing investigation" and affect "th[e] developing procedure of negotiated corporate self-investigation." *Id.* at 618. StoneTurn and Boston Portfolio argue that this case is analogous to *LTV Securities* because the non-parties were appointed by NYDFS to be a compliance monitor after NYDFS found deficiencies in Ocwen's loan servicing operations and required substantial remedial measures to be taken.

The Relators contend that there is no evidence that when these documents were prepared, the "primary motivating purpose" for creating the documents was to "aid in possible future

litigation." The Court agrees and finds that StoneTurn and Boston Portfolio have not met their burden to demonstrate that the work product privilege applies to these documents. There is no evidence that the primary motivating purpose of the creation of these documents was to aid in possible future litigation. Rather, the evidence suggests that the purpose of the monitorship was "to assist NYDFS in understanding and assessing the extent of compliance, or non-compliance, of one of its regulated entities" (No. 4:13-MC-14, Dkt. #1 at 7). The *LTV Securities* case is distinguishable here because in that case the court specifically stated that counsel's efforts on LTV's behalf "were motivated by the anticipation of future litigation," and applied the work product privilege to those documents. 89 F.R.D. at 612. That is not the case here, and the Court finds that to the extent the subpoena requests the production of documents that were created by StoneTurn or Boston Portfolio and are internal reports or other documents, those documents are not unduly burdensome to produce and are not protected by work product privilege. The movants' motion is denied on this ground.

## CONCLUSION

Based on the foregoing, the Court finds that Boston Portfolio Advisors, Inc.'s Re-Urged, Opposed Motion to Quash Plaintiffs' Non-Party Subpoena (Case No. 4:15-MC-13, Dkt. #8) is hereby **GRANTED IN PART** and **DENIED IN PART**. The Court further finds that StoneTurn Group, LLP's Opposed Motion to Quash Plaintiffs' Non-Party Subpoena (Case No. 4:15-MC-14, Dkt. #1) is hereby **GRANTED IN PART** and **DENIED IN PART**. To the extent that the subpoena requests documents produced by Ocwen to StoneTurn and Boston Portfolio for purposes of the monitorship, the Court finds that the subpoena requests are unduly burdensome, and the subpoenas are quashed as to those documents at this time. To the extent that the subpoenas request certain internal documents created by StoneTurn and Boston Portfolio as a

product of their investment, the Court finds that those documents responsive to the subpoena should be produced within thirty (30) days of the date of this Order.

**SIGNED this 26th day of June, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE